KichaÉdson, J.,
filed the opinion of the court:
This case comes to a hearing upon the claimant’s petition, to which the defendants have demurred. The facts thus alleged and admitted are, that the claimant entered the Army, as first lieutenant, on the 29th March, 1848; that he became a captain on the 14th May, 1861, and a major on the 20th January, 1865, by appointment by the President with the advice and consent of the Senate, and that he was honorably mustered out January *570 1,1871, upon the reduction of the Army, under the Act loth July, 1870, chap. 194, § 12 (10 Stat. L., 318).
On the 3d March, 1879, Congress passed the following act (20 Stat. L., 484):
Chap. 201. — An act for tlie relief of Josefili B. Collins.
11 Be it enacted, <#<?., That the President be and he is hereby authorized to reinstate Major Joseph B. Collins, late of the United State Army, and to retire him in that grade, as of the date he was previous^ mustered out; charging him with all extra pay and allowances, paid him at that time.”
Under and in pursuance of this act, the President, on the 8th March, 1879, issued the following order:
“ Executive Mansion, March 8th, 1879.
u Under authority conferred by the act approved March 3d, 1879, Joseph B. Collins is hereby reinstated in the Army of the United States as a major of infantry, and placed on the retired list in that grade, to date January 1, 1871.
“R. B. HAYES.”
The claimant accepted the reinstatement and sought to obtain the pay allowed by statute to a retired officer of his rank (Rev. Stat., §1274), less the one year’s pay and allowances which he had received under the act of 1870, above cited, by which he was mustered out of service, in accordance with the provisions of the act authorizing his reinstatement. This the accounting officer of the Treasury refused to allow, on the ground, it is understood, that he had not been reappointed with the advice and consent of the Senate.
Two questions arise which require careful consideration: First, whether by the terms.of the act Congress intended to confer upon the President alone authority to reinstate the claimant; and, second, whether it had the constitutional power so to do.
It appears to have been the purpose of Congress to place upon the retired list a veteran officer who, upon the induction of the Army, had been ungenerously mustered out ef service. It was not its object to increase the effective military force of the Army, but to place upon what may be regarded as an especially honorable pension-roll a single individual, who, after long service, had the misfortune to be summarily dismissed without any fault of his own.
Three times he had been appointed to office in ‘the Army with the advice and consent of the Senate, and this act for his reinstatement was not to promote him to a higher grade or to confer *571 upon Mm any other office than the one which he had last held by an appointment thus made, and from which he was to be retired from active duty as soon as he should be reinstated. The reinstatement was thus a matter of no military importance to the active force of the Army, and involved practically only the question whether the individual should be pensioned in the form of receiving the pay of a retired officer.
These facts seem to present .sufficient reasons why Congress should not have considered it expedient to require the President to ask the further advice and consent of the Senate, especially as the concurrence of the Senate was necessary to the passage of the act 5 and it explains why the act was draughted in language which we think is too clear to admit of doubt as to its meaning, and which authorized the President alone*to reinstate the claimant for the purpose of placing him on the retired list.
This method of appointment or reinstatement without the advice of the Senate appears to be in accordance with the usual if not invariable course of legislation by Congress in similar cases, as well as in some others where no further action by the Senate seemed to it to be desirable, as may be seen from the following acts:
Act 1876, June 26, chap. 144 (19 'Stat. L., 60), authorized the President to place Col. W. H. Emory on the retired list as a brigadier-general.
Act 1877, March 3, chap. 130 (19 Stat. L., 407), authorized the President to restore to his former rank and relative grade in the Army Thomas J. Spencer, late first lieutenant.
Act 1877, March 3, chap. 133 (19 Stat. L., 408), directed the proper authorities to place the name C. G-. Freudenberg upon upon the retired list of Army officers under the rank and grade of lieutenant-colonel instead of captain.
Act 1877, March 3, chap.' 134 (19 Stat. L., 408), enacted that Thomas E. Maley “ is hereby restored upon the list of retired officers of the Army to the full rank of lieutenant-colonel, held by him at the date of his retirement.”
Act 1877, chap. 25 (19 Stat. L., 416), authorized the President to appoint Samuel K. Thompson to the rank of second-lieutenant in the Army, without pay for the actual period he was out of the service.
Act 1876, June 21, chap. 143 (19 Stat. L., 441), authorized the President to restore James B. Sinclair, first-lieutenant, retired, to the rank of captain of infantry, as held by him December 31, *572 1870, and that Ms name be placed on tlie retired list as of tlie rank he held at that date.
Act 1876, July 24, chap. 230 (19 Stat. L., 467), authorized the President to reappoint George T. Olmstead, jr., late a captain in tlie Army, and to duly commission him as the same, without pay while he was not in active service.
Aet-1876, July 25, chap. 232 (19 Stat. L., 467), enacted that Albert W. Preston is hereby restored upon the list of retired officers of the Army to the full rank of colonel, held by him from the date of his retirement, &c.
Act 1878, Jume 19, chap. 330 (20 Stat. L., 206), authorized the President to restore Robert O. Walker, late paymaster, to the Army Register, for the purpose of being placed on the retired list. *
Act 1879, February 19, chap. 91 (20 Stat. L., 316), authorized and directed the Secretary of War to place on the list of retired officers the name of Francis O. Wyse, as retired lieutenant-colonel, without compensation between July 25, 1863, and the approval of the act.
Act 1879, March 3, chap. 175 (20 Stat. L., 354), authorized the President to restore Philip W. Stanhope to his proper rank and position in the Army, with directions to the Secretary of War to place him on the retired list without regard to the limit as to numbers.
But in those cases where officers have been reinstated to form part of' the active force of the Army Congress has generally employed a different phraseology, and has in terms required the advice and consent of the Senate to be given to a nomination by the President.
Act 1878, April 8, chai). 50 (20 Stat. L., 35), authorized the President to nominate and, by and with the advice and consent of the Senate, to appoint John A. Darling, late captain of Second Artillery, a captain of artillery, with his former rank and date of commission, and provided that he be assigned to the first vacancy of his grade.
Act 1878, April 23, chap. 64 (20 Stat. L., 37), authorized the President, if he desired, “ in the exercise of his own discretion and judgment, to nominate and, by and with the advice and consent of the Senate, appoint George A. Arms, late captain,” &c., to the same grade and rank he held June 7, 1870, without pay, before reappointment.
*573 So in Act 1878, June 19, chap. 331 (20 Stat. L., 206), in the case of Horace E. Mullan.
Act 1879, January 29, chap. 35 (20 Stat. L., 276), in the case of Junius L. Powell.
Act 1879, February 25, chap. 100 (20 Stat. L., 321), in the case of Michael O’Brien.
Act 1879, March 1, chap. 114 (20 Stat. L., 324), in the case of Edwin B. Clarke.
Act 1879, March 3, chap. 188 (20 Stat. L., 470), in the case of Thomas B. Hunt.
These two classes of statutes show that between officers to be restored for active service and those who are to be restored in order to be placed on the retired list, or whose cases are otherwise peculiar, Congress makes a distinction as to requiring or dispensing with the advice and consent of the Senate to their restoration, and that it acts advisedly in the use of the different language employed, with the clear intent to define in each case upon whom the appointing power is conferred.
Moreover, section 1228 of the Bevised Statutes, re-enacted from the Act 1867, chap. 185 (15 Stat. L., 125), provides that “No officer of the Army who has been or may be dismissed from the service by the sentence of a general court-martial, formally approved by the proper reviewing authority, shall ever be restored to the military service except by a reappointment confirmed by the Senate.” This is a clear recognition by Congress, in a general law, that the restoration of dismissed Army officers is authorized and effected in some cases, if not usually, without confirmation by the Senate, and it is an implied approval and confirmation of the practice, except where an officer has been dismissed by the sentence of a general court-martial, for which case alone it enacts an express prohibition against restoration in that manner. Fxpressio nnius est exclusio alterius.
Thus the course of legislation, the language of the act itself for the claimant’s relief, and the manifest reasons for the same, leave no room for doubt that Congress did intend to vest in the President alone the authority to reinstate the claimant for the purpose of placing him on the retired list.
This brings us to the question whether Congress has the constitutional power to authorize the President alone thus to reinstate or reappoint a major in the Army.
.The Constitution provides that—
“He [the President] shall nominate, and by and with the *574 advice and consent of the Senate, shall appoint ambassadors, other public ministers and consuls, judges of the Supreme Court, and all other officers of the United States, whose appointments are not herein otherwise provided for, and which shall be established by law: but the Congress may by law vest the appointment of such inferior officers, as they think proper, in the President alone, in the courts of law, or in the heads of departments.” (Art. II, § 2,)
It would be impossible to define, except arbitrarily, the meaning’ of the words “ inferior officers,” in their application to officers of the different branches of the public service who have no official relation to each other, and it would not be easy to separate all the officers of the government into two classes and draw a satisfactory line which would divide the inferior, in the sense in which it is claimed that word is used, from those of the higher class, nor is it necessary to attempt to do either. In our opinion, the words as used in connection with the other language of the same clause, have a plain, definite, and intelligible meaning, capable of unmistakable application to effect the purposes of that provision of the Constitution. Having specified certain officers, ministers, consuls, and judges of the Supreme Court who shall be nominated by the President and appointed by and with the advice and consent of the Senate in all cases, the Constitution leairns it to Congress to vest in the President alone, the courts of law, or the heads of departments the appointment of any officer inferior or subordinate to them respectively, whenever Congress thinks proper so to do. Thus it may authorize the President or the head of tbe War Department to appoint an Army officer, because the officer to be appointed is inferior to the one thus vested with the appointing power. The word inferior is not here used in that vague, indefinite, and quite inaccurate sense which has been suggested— the sense of petty or unimportant; but it means subordinate or inferior to those officers in whom respectively the pewer of appointment may be vested — the President, the courts of law, and the heads of departments. It is a word having definite relation to a superior j and subordinate,” lower in place, station, or rank,” are the principal significations given to it by lexicographers — (Worcester, Webster, &o.) — Bouvier defines it to mean “ one who, in relation to another, has less power and is below him; one who is bound .to obey another.” (Bouv. Law Die.)
Mr. Justice Thompson, speaking for the Supreme Court, in ex parte Hennen (13 Peters, 258, and 13 Curtis, edition 137), *575 said: “ Tlie appointing power liere designated in tlie latter part of tlie section (Art. 2, see. 2, Constitution) was no doubt intended to be exercised by tlie department of tlie government to which the officer to be appointed most appropriately belonged.”
The Constitution contemplates that Congress will provide how all such inferior officers shall be appointed, and requires them to be nominated by the President and appointed by and with the advice and consent of the Senate only when Congress omits to make any other provision therefor.
■Whenever, therefore, Congress thinks proper to vest in the President alone, in a court of law, or in the head of a department the appointment of any of their respective subordinate officers, other than those named in the clause under consideration, or whose appointment is otherwise provided for by the Constitution, it musí; be held that such officers are inferior officers within the meaning of the Constitution, whose appoint ment in that manner Congress has the power to authorize; and the act of Congress must be respected and enforced by the executive officers of the government and by the courts.*
Such an act can only be passed with the concurrence of the Senate; and it is the Senate alone that becomes thereby deprived of further participation in the appointing power which it would have but for its own consent, and which it voluntarily waives in the manner pointed out by the Constitution.
In Moore’# Gane (95 U. S., 760) the Supreme Court has gone much further than we now go, or than this case requires, in upholding the validity of an ajipointmentmade without the advice and consent of the 'Senate. The statutes provided that the active list of the Medical Corps of the Navy should consist of 15 medical directors, 15 medical inspectors, 50 surgeons, and 100 assistant surgeons (Rev. Stat., § 1368); that all appointments in the Medical Corps should be with the advice and consent of the Senate (Rev. Stat., § 1369); that no person should be appointed surgeon until he had served as an assistant surgeon two years and had been examined and approved for such appointment, &c. (Rev. Stat., § 1371). It had long been the custom of the Navy Department to examine assistant surgeons for promotion as surgeons after a certain period of service and before vacancies occurred to which they could be appointed, and as *576 sistant surgeons who bare tints passed their examinations are called “ passed assistant surgeons.” By that designation they are recognized in .the statutes fixing their pay and their rank (Rev. Stat., §§ 1474, 1556), but no special provision is made therein for their appointment.
Moore was an assistant surgeon who had successfully passed his examination for promotion, and had been notified by the Secretary of the Navy that the report of the board of examiners was approved by the department, and that from that date he would be regarded as a “passed assistant surgeon.” It was held by the Supreme Oourtthat “ the place of passed assistant surgeon is an office, and the notification by the Secretary of the Navj' was a valid appointment to it. (United States v. Hartwell, 6 Wall., 385; Const., Art. II, sec. 2; 95 U. S., 762.)
If under those circumstances such a notification by the Secretary of the Navy was a legal and constitutional appointment, in the absence of any express authority from Congress therefor, so must certainty be the formal reinstatement of the claimant by the President. Such reinstatement is in exact conformity with the provisions of the act of Congress passed for his relief. There is no general provision of law requiring the advice and consent of the Senate to the appointment of majors in the Army as there is to that of all officers of the Medical Corps of the Navy, except for the restoration of an Army officer who has been dismissed from the service by the sentence of a general court-martial (Bev. Stat., § 1228). The Senate has in fact, though not in technical form, given its consent to the reinstatement of the claimant by name by concurring in the passage of the act for his relief.
It is therefore clear on principle and authority, that his appointment was legal and constitutional, and that he is entitled to the pay and emoluments of the office which he claims.
The judgment of the court is that the demurrer be overruled, and that the defendants, on their motion, have leave to answer over.
We have not considered the question of the amount of pay due to the claimant, because it was not argued at the hearing, and its determination at this time is unnecessary, if it be in controversy, since the defendants have leave to answer further.
Draice, Cb. J., was absent when this case was heard, and took no part in the decision.

 Since tliis case was determined the Suineine Court has rendered a decision and given an opinion in accord with the views here expressed. (United States v. Germaine, 99 U. S., 503).