Richardson, J.,
delivered the opinion of the court:
This case was submitted to the court at a former term upon demurrer, presenting the single point whether or not the President was authorized by the act of March 3, 1879, chapter 201, *30 and under tbe provisions of the Constitution, to reinstate the claimant in the Army without the further advice and consent •of the Senate. We held that he had such right, and that his order of March 8, 1879, set forth in the second finding, was a valid reappointment and reinstatement of the claimant as contemplated by said act (14 C. Cls. R., 508). After reargument by the parties, and upon further consideraton, we adhere to the opinion then expressed, and now adopt the same as the views of the whole court.
The demurrer was overruled and the defendants had leave to answer over, and the case has been tiled upon its merits, presenting in the findings some facts not before set up. These are as follows:
On the 18th of March, 1879, the Secretary of W.ar addressed a letter to the claimant informing him that the President had reappointed him (with a view to placing his name on the retired list) a major of infantry, to rank as such from January 20,1865j and that should the Senate at its next session advise and consent thereto, he would be commissioned accordingly. On the 11th of March the General of the Army notified the claimant that, having been reinstated in the Army by.the President, under the act of March 3, 1879, he was, by direction of the President, placed on the retired list, to date from January 1, 1871, the date of his muster out. On the 24th of March, 1879, the President sent to the Senate, under date of March 21, the nomination of the claimant for the appointment of major of infantry, to rank from January 20,1865, to reinstate him in the Army, with a view to his being retired from active service from January 1,1871. On the 25th of March the claimant sent to the Adjutant-General of the Army his acceptance in writing of his reinstatement and retirement as major of infantry under the President’s order of March 8,1879. No action was taken by the Senate on the nomination, and on the 10th of June it was withdrawn by the President. The foregoing facts and the documents referred to all appear in the third finding.
The defendants claim that the letter of Major Collins of March 25, 1879, was in response to the letter of the Secretary of War of March 8, and was the acceptance of a conditional appointment, depending for its consummation and validity upon the favorable advice and consent of the Senate thereto. In our opinion the letter was in answer to that of the General of the *31 Army of March 11, 1879, signed by the Adjutant-General, the language of which it follows very closely, while it does not reply to the requests contained in that of the Secretary of War.
But if the defendants are correct in assuming that Major Collins’s letter is in reply to that of the Secretary of War, the consequences which they allege would not follow. The claimant had already asked the President in writing to reinstate him under the act, and the President- had done so, and no further formal acceptance was necessary. A subsequent written acceptance in any form could not change the terms of his appointment nor add thereto any condition imposed by the Secretary of War.
Nor does the letter of the Secretary of War attempt to make the appointment a conditional one. ‘On the contrary, it recites that the President, under the authority of the act of March 3, 1879, has appointed the claimant with a view of placing his name on the retired list. The only condition mentioned is that should the Senate, at their next session, advise and consent thereto, the claimant would be commissioned accordingly. But no further commission was necessary. The claimant had received all that was necessary under the law — an order from the President reinstating and retiring him in accordance with the provisions of the act. This was a much more formal appointment than that which the Supreme Court- expressly held to be valid in Moore's Case (95 U. S., 76, and see 14 C. Cls. R., 575). That was a mere certifícate of an examining board, approved by the Secretary of the Navy, settingforth that Moore had passed a satisfactory examination for promotion.
According to the views expressed by the Supreme Court in Marbury v. Madison (1 Cranch, 157, and 1 Curtis’s Edition, 373), when the President, by an “ open unequivocal act,” exercised the discretion reposed in him, and. expressed his will appointing the claimant, the latter acquired a vested right to the office, and became entitled to a commission or to exercise his official duties without one. The court say, “ The acts of appointing to office and commissioning the person appointed can scarcely be considered as one and the same, since the power to perform them is given in two separate and distinct sections of the Constitution.”
For some reason which does not clearly appear, it was at first (kerned advisable in this instance to ask the advice and *32 consent of tbe Senate after the appointment had been made. It will be observed that the nomination by the President asks that advice and consent to something more than the act provided for. It asks the reinstatement of the claimant u to rank from January 20, 1865,” a date six years earlier than that mentioned in the act in reference to the time of his retirement. The letter of the Secretary of War also mentions the earlier date as that from which the claimant was to have rank as a major, and for which he would have a commission if the Senate would advise and consent thereto. It may have been with the view of giving to the claimant a commission entitling him to rank from January 20,1865, instead of January 1,1871, that the letter of the Secretary was written and the nomination by the President was made. Or the advice and consent of the Senate might have been asked out of abundant caution, in order to avoid the very objection which is now raised on the part of the ■ defendants, that the President alone was not authorized to make the appointment. Upon subsequent, and no doubt more mature, consideration, the nomination was withdrawn by the President as unnecessary; and since this action was commenced the claimant’s reinstatement has been recognized by the War Department, and he lias been paid his current salary from March 8,1879.
In our opinion, moreover, all the proceedings set forth in the third finding, having occurred after the issue of the order by the President, March 8, 1879, reinstating the claimant, are wholly immaterial in this cáse. That order fixed and determined the rights of the claimant, and he thereby and thereupon became a retired officer of the Army. What the Secretary of War thereafter wrote about the matter, and what the President subsequently did, in nominating him for appointment to an office which he already held, could not undo what had been done nor take from the claimant the vested rights and privileges which he had previously acquired under the law.
The claimant seeks to recover the pay of a retired officer from January 1,1871, the date as of which he was retired by the President under the provisions of the act for his releif, and the question arises whether or not that w.ts the intention of Congress, as expressed in the act.
Much light is thrown on this subject by an examination of other acts in similar cases. In our former opinion in this case *33 niioii the demurrer (14 C. Cls. R., 568) we referred to tlie numerous nets of Congress authorizing the restoration of officers to the service from, which they had been removed for different causes and under different circumstances. Of these eighteen acts, only one is in its language like that now under consideration. Every one of the other acts authorizes the appointment from the date of the act, or when it specifies an earlier date it adds a provision in ivords like the following, which we quote therefrom: “ with pay of such rank from the date of the passage of this act,” or he “ shall not be entitled to any pay or allowances as an Army officer for the time he may have been out of the military service,” or “ no pay shall be given him for the actnalperiod lie was out of t-lie service,” or “no pay, compensation, or allowance whatever shall be given to said-for the time between said-and the date of the appointment hereunder,” or “that he receive no payor allowances for the time he was out of service, other than that already received at the time of his muster out.” Two of these acts, in which back pay is prohibited, were passed on the same day as the act for the present claimant’s relief now under consideration. (Chap. 175, 20 Stat. L., 353, and ch. 188, 2 Stat. L., 470.)
It is significant of the intention of Congress that of all these nineteen private acts for the benefit of individual officers, only two — that for the reappointment of Dr. Dowell as an assistant-surgeon in the Army, to which wo have before referred (20 Stat-L., 276), and this one for the relief of Major Collins — omit to. prohibit or prevent, in some form, the beneficiary from receiving back pay. This difference of language in so important a matter can he accounted for on no other ground than that the-cases of Dr. Dowell and Major Collins were regarded as so. exceptional in their circumstances that Congress was willing- and intended to allow them pay from the date as of which they were respectively authorized to be appointed or retired.
What were all the exceptional circumstances in these, two cases may not be susceptible of legal inference, but there are some considerations apparent on the record. In Dr. Dowell’s case, the time was very short, the act having been passed January 29, 1879, authorizing his appointment from the 6th day of the previous June, a little less than eight-months. In the claimant’s case it appears that he had been twenty years in active service, under liis four different appointments, and had been *34 mustered out on the reduction of the Army, without fault of his own.
Other language in the act for the claimant’s relief, not found in any other similar act, goes far to show the intention of Congress to have been that he should receive the pay of a retired officer from the date as of which he was to be retired. It requires him to be charged with all extra pay and allowances paid him at the time he was mustered out, a sum amounting to $3,500, as the findings show. Unless, then, Congress intended that such pay should be allowed to him, the effect would be to postpone the operation of the provision for his relief for nearly a year and a half, until Ms future retired pay, at $2,055 a year, should amount to that sum thus charged against him, and if he should die within that time, to make his estate liable to the United States for the balance. We think it is a far more reasonable conclusion that Congress contemplated that the $3,500 with which he was to he charged should be deducted from the back pay intended to be accorded to him. The act was passed for the relief of the claimant, as its title expressly declares. It was intended to confer upon him an immediate benefit, and not to impose upon him a debt which his future pay might prove insufficient to discharge during his lifetime.
The present Judge-Advocate-General, Solicitor-General, and Attorney-General have each officially advised, in writing, that the act under consideration “ confers a right to i>ay from the date at which Major Collins was mustered out.” In our opinion, the conclusion which they reached is a sound construction of the statute.
There is a class of cases with which this should not be confounded ; cases- where officers, for the purposes of rank, are appointed and commissioned by the Executive as of a date earlier than the day of appointment, without any special act of Congress. Such was the case of Surgeon 3)n Barry, in which Attorney-General Clifford very strongly advised that the appointee was not entitled to pay prior to the time of his actual appointment. (4 Opin. Att’ys Gen., 603.) It is clear that the Executive — the President aloue, of the President with the advice and consent of tire Senate — by antedating the commission or appointment of a public officer, without legislative authority, cauiiot create a liability on the part of the United States to paj' him a salary for the time he was not in service; but Congress, *35 tbe -legislative braucli of tlie government, may by law create snob liability, and may allow back pay to any public officer in consideration of past services or for any other cause which they deem sufficient.
On the part of the defendants it is further objected that the claimant cannot recover in this action because there is no apjuo-priation of money for the payment of this claim j and that clause of the Constitution which says that “no money shall be drawn from the Treasury but in consequence of appropriations made by law” is cited in support of this objection. (Con., Art. 1, § 9, cl. 7.)
That provision of the Constitution is exclusively a direction to the officers of the Treasury, who are intrusted with the safekeeping and payment out of the public money, and not to the courts of law; the courts and their officers can make no payment from the Treasury under any circumstances.
This court, established for the sole purpose of investigating claims against the government, does not deal with questions of apxn’opriations, but with the legal liabilities incurred by the United States under contracts, express or implied, the laws of Congress, or the regulations of the executive departments. (Rev. S#tat., § 1059.) That such liabilities may be created where there is no appropriation of money to meet them is recognized in section 3732 of the Revised Statutes. It is there provided that “no contract or purchase on behalf of the United States shall be made, unless the same is authorized by law, or is made under an appropriation adequate to its fulfillment, except in the War and Navy Departments, for clothing, subsistence, forage, fuel, quarters, or transportation, which, however, shall not exceed the necessities of the current year. ”
The compensation to which public officers are legally entitled depends upon general and continuing laws fixing their salaries. The officers of the Treasury have no authority to pay such compensation until appropriations therefor are made; and these -are made by Congress annually, except in the ease of the judges of the Supreme Court, for whose salaries there is a permanent annual appropriation (Rev. Stat., § 3689, 2d ed., p. 729.) The liability, however, exists independently of the appropriation, and may be enforced by proceedings in this court. In Graham’s Case (1 C. Cls. R., 381), where Congress appropriated a sum less than the amount of the salary established by law for the office which *36 the claimant lield, it was determined that be was entitled to the full amount of the established salary, and he recovered judgment therefor.
When this court gives judgment against the United States, the constitutional prohibition referred to applies to the judgment as it did to the claim upon which it is founded. The officers of the Treasury cannot pay the judgment unless there is an appropriation therefor, either in the general form for the payment of judgments of this court or specially for the particular case. (McKnight et al. v. The United States, 13 C. Cls. R., 303, 399.) So we are in no way brought in conflict with that provision of the Constitution.
It is further insisted on behalf of the defendants that the salary paid to the claimant while he held the office of a clerk in the War Department should be deducted from his pay as a retired officer during the same period of time. There is nothing-in the act for his relief which requires such a deduction. On the contrary, the act expressly charges him witl¿ all extra pay and allowances paid to him at the time of his muster out, and omits to charge him with the amount of compensation received by him as a clerk in the War Department. The expression of one item of charge only seems to imply an exclusion of ¿he other. Is there, then, anything in the general laws that sustains the defendants’ claim ?
There are provisions of law which forbid some persons from holding two of certain specified offices; but the Devised Statutes, sections 12112 and 1223, imply that a retired Army officer may at the same time hold any other office except in the consular and diplomatic service of the government. The first of these sections prohibits an officer on th e-active list from holding any civil office, whether by election or appointment; and the latter provides that any officer in the Army who accepts or holds any appointment in the diplomatic service of the government shall be considered as having resigned his place in the Army, and it shall be filled as a vacancy. Where the statutes, directly or indirectly, recognize the right of a person to. hold separate offices, a strong implication arises that he may have the salary attached to each without restriction.
Section 3 of the Act 1839 (ch. 82, 5 Stat. L., 349,), section 2 of the Act August 23, 1842 (ch. 183, 5 Stat. L., 510), and section 12 of the Act August 26, 1842 (5 Stat. L., 525), all now incorporated *37 in the Revised Statutes, in §§ 1764 and 1765, liave been understood as prohibiting only additional pay and extra allowances and compensation to public officers in the various forms there specified. They have not been supposed to apply to the salaries of different offices legitimately held by the same person. They were contained in annual appropriation acts, which abound in repetitions. The second act repeats the prohibition contained in the first, and the third makes only a slight additional prohibition ; but neither of them specifies the case of a person holding more than one office by separate and legal appointments.
The Appropriation Act September 30, 1850 (ch. 90, 9 Stat. L., 542), contained a proviso, “That hereafter the proper accounting-officers of the Treasury, or other pay-officers of the United States, shall in no case allow any [and] pay to one individual the salaries ■of two different officers on account of having performed the •duties thereof at the same time.”
This act was followed by that of August 31, 1852 (ch. 108, § 18, 10 Stat., § 100), which provided, “That no person hereafter, who holds or shall hold any office under the government of the United States, whose salary or annual compensation shall amount to the sum of $2,500, shall receive compensation for discharging the duties of any other office.”
TThen the statutes were revised, Congress treated this later act as having superseded the proviso in the act of 1850, and they incorporated it into the Revised Statutes, in section 1763, where it now stands as the existing law. The proviso in the act of 1850 was omitted from the revision, and thus became repealed by the operation of § 5596.
Mr. Attorney-General Bvarts, in an official opinion on this ■subject given to the Secretary of the Interior in 1868, says:
“The construction and effect of this statute of September 30, 1850, were considered by Mr. Cushing in the opinion from which I have quoted, and also by Mr. Crittenden in Aeiro’s Case (5 Opin., 766). The former says: 4 Its effect is that an individual holding an office shall not receive the salary of another which he does not hold, but of which, by temporary appointment or ■otherwise, he merely performs the duties. It does not prohibit the holding of more than one office with the salary of each, the wisdom or propriety of which is a thing for Congress to determine.’ Mr. Crittenden,, after quoting the act, says: ‘ The plain meaning of this seems to be, that an individual holding one ■office, and receiving its salary, shall in no case be allowed to receive also the salary of another office which he does not hold, *38 simply on account of Ms baying performed the duties thereof/ The prohibition is against liis receiving the salary of an office-that he does not hold and not against his receiving the salaries of two offices which he does legitimately hold. If it had been the intention of Congress to prohibit in all cases the holding of a plurality of offices, that purpose could have been easily and directly expressed. The language they have used imports no' such purpose, but is directed at an object and abuse distinct and separate.” (12 Opin., 460.)
Mr. Evarts seems to have adopted these views.
We have the official opinions of six Attorneys-General that the statutes 'do not prohibit a person from drawing the salaries of two distinct offices which he legitimately holds: That of Mr. Crittenden, in 1851 (5 Opin., 765); of Mr. Cushing, in 1853 (6 Opin., 80); of Mr. Black, in 1860, receding from a former contrary opinion (9 Opin., 507); of Mr. Bates, in 1863 (10 Opin., 446); Mr. Evarts, in 1868 (12 Opin., 459); and of Mr. Devens, June 11, 1877.
The Supreme Court appears to have held to the same doctrine-in 1858, notwithstanding the proviso in the act of 1850, before cited, and the prohibitions contained in the acts of 1839, 1842, and 1852, now constituting sections 1703, 1704, and 17G5 of the-Revised Statutes. (Converse v. United States, 21 How., 463.)
Furthermore, Congress, at its first session after Attorney General Crittenden’s opinion was promulgated, passed the act of 1852 (now Rev. Stat., § 1703), relaxing the provisions of the former act, and, according to the Revised Statutes, superseding it. This act is drawn in language which seems peculiarly appropriate for the adoption of the construction given by Mr. Crittenden in the extract quoted in the opinion of Mr. Evarts, ■which we have just cited. At the same time, Congress limited the application of the act to the case of officers whose salary is. $2,500 a year or over.
• In this very case, Mr. Attorney-General Devens has given a written official opinion to the ¡Secretary of War, under date of June 11,1877, in which he says:
“ Sections 1703,1704, and 1705 of the Revised Statutes forbid any person who holds an office, the salary or annual compensation. of which amounts to the sum of $2,500, to receive compensation for discharging the duties of any other office, unless, expressly authorized by law; also directs that no allowance or- *39 compensation sliall be allowed to any officer or clerk by reason of the discharge of duties which belong to any other officer or clerk in the same or any other department, and that no officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation in any form whatever, for the disbursement of public money or for any other service or duty whatever, unless the same is authorized by law and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation.
“The construction which has been given to these statutes (especially in the case of Converse v. The United States, 21 How., 463) is that the intent and effect of them is to forbid to officers holding one office to receive compensation for the discharge of duties belonging to another, or additional pajr, extra-allowance, or compensation for such other services or duties, where they hold the commission of but a single office, and, by virtue of that office, or in addition to the duties of that office, have assigned to them the duties of another office. According to that decision, however, if an officer holds two distinct <¿pm-missions, and thus two distinct offices, he may receive the salary for each. The evil intended to be guarded against by these statutes was not so' much plurality of offices as it was additional pay or compensation to an officer holding but one office for performing additional duties or the duties properly belonging to another. If he actually holds two commissions and does the duties of two distinct officers he may receive the salary which has been appropriated to each office. Sections 1763,1764, and 1765, above referred to, are condensations from statutes which were in existence at the time that this decision was made, and in conformity with it I deem it my duty, in answer to your inquiry, to say that a retired officer may draw his pay as such, and may also draw the' salary of any civil office which he may hold under the government, assuming- always that the duties of the civil office are performed under and by virtue of a commission appointing him to that office, which he holds in addition to his rank as a retired officer.”
In the several acts referred to, prohibiting extra allowances and additional compensation to public officers, Congress not only seems carefully to have avoided enacting, in distinct and clear language, that no person shall receive the salary of more than one office which he holds at the same time, but they repealed the proviso in the act of 1850 which most nearly expressed that idea.
Upon the whole, whatever may have been the true construe *40 tion of the proviso in the act; of 1850, now no longer in force, it seems evident from the phraseology of sections 1703, 1704, and 1705 of the Revised Statutes and-the acts from which they were taken, especially when interpreted by the light of the circumstances under which the same were enacted, and in connection with the opinions which we have cited, that a jrablic officer who legitimately holds two offices may .receive the salary of each.
Moreover, in our opinion, the provisions of Revised Statutes, section 1703, and the section of the act of 1852 of which it is a continuation, upon which the defendants specially rely, cannot, for other reasons, be made to apply to the claimant’s case, lie held a clerkship, the salary of which was less than $2,500 a year; and the money allowed him by the act of March 3, 1879, for his relief is not given as compensation for discharging the duties of any office during the period for which it is to be paid, but rather as a bounty, and in the nature of a pension, for services to his country previously performed. In point of fact, while he held the office of clerk in the War Department he discharged no other duties whatever.
Retired officers of the Army are not required to perform any active service. (Rev. Stat., § 1255.) Upon their own application they may be detailed to serve as professors in colleges, and by special selection and assignment they may be employed at the Soldier’s Home; but those employments, although without additional pecuniary compensation, are accompanied with benefits and privileges which render them desirable to the parties, and are not regarded, as the imposition of official public service. (Rev. Stat., §§ 1259, 1260.)
On the whole case, we find that the claimant is entitled to recover the sum of $17,987.83, which is the balance due after charging him with, the extra pay and allowances which he received at the time of.liis muster out; and judgment will be entered in his favor for that sum.