Peelle, J.,
delivered the .opinion of the court:
The claimant seeks to recover under the following statute the pay of commander in the United States Navy as on leave or waiting orders from August 1, 1883, to June 1, 1895, and three-fourths of the sea pay provided by law for a commander on the retired list from the latter date to May 26,1897:
AN ACT for tlio relief of John N. Quackenbush, late a commander in the United States Navy.
“Be it enacted by the Senate and House of Bepresentatives of the United States of America in Congress assembled, That the provisions of law regulating the appointments in the Navy by promotion in the line and limiting the number of commanders to be appointed in the United States naval service are hereby *364 suspended for tbe purpose of this act only, and only so far as they affect John N. Quackenbush; and the President of the United States is hereby authorized, in the exercise of his discretion and judgment, to nominate and, by and with the advice and consent of the Senate, to appoint the said John N. Quackenbush, late a commander in the United States Navy, to the same grade and rank of commander in the United States Navy as of the date of August 1,1883, and to place him on the retired list of the Navy as of the date of June 1, 1895: Provided, That he shall receive no pay or emoluments except from the date of such reappointment.”
The facts are:
The claimant, while a commander in the United States Navy, was tried by a general court-martial and sentenced to be dismissed from the naval service of the United States, which sentence was approved by the President June 5,1874, with his sign manual, official notice of which was mailed to the claimant at his address in Boston, Mass., by the Secretary of the Navy, June 9,1874.
The next day, June 10, the President nominated W. S. Schley to the Senate to be commander, “vice Quackenbush, dismissed,” and two days later, June 12, he was confirmed, and thereafter duly appointed commander by the President, the full quota of ninety commanders then allowed by Revised Statutes, section 1363, thereby being filled.
The same day on which Schley was confirmed, June 12, the Secretary of the Navy addressed a communication to the claimant requesting him to “return to the Department the order dismissing him from the Navy,” and by reason of the claimant being in Grantville at that time instead of Boston, the communication of June 9, notifying him of the President’s approval of the sentence of dismissal, as well as the one of June 12, requesting him to return the order of dismissal, were both delivered to him at the same time — June 15.
December 8,1874, the Secretary of the Navy addressed a letter to the claimant, by which he was informed that the naval general court-martial, by which he had been tried and found guilty of the charge preferred against him and sentenced to be dismissed from the naval service, had, on June 9,1874, been “mitigated to suspension from rank and duty on furlough pay for six years, the suspension to date from that day.”
The claimant served under suspension and was paid as on furlough for six years, and from June 9,1880, to March 31,1881, *365 be was taken on tbe rolls of tbe paymaster at tbe navy-yard, Boston, Mass., and paid as on “waiting orders.”
Tbe claimant’s name was left off tbe official Navy Begister, published August 1,1883, by direction of tbe then Secretary of tbe Navy, and thereafter, in December, 1883, tbe President nominated D. W. Mullan to tbe Senate to be commander “vice John N. Quackenbush, no longer in tbe service,” which nomination was confirmed, and said Mullan was thereafter duly appointed commander by tbe President, thus again filling tbe quota of commanders then allowed by law.
Tbe claimant’s contention is that be was never legally out of tbe naval service, while tbe defendants insist that tbe sentence of the court-martial, so approved by tbe President, followed by tbe appointment, with tbe advice and consent of tbe Senate, of W. S. Schley as commander in tbe claimant’s stead, operated to dismiss or remove him from tbe service, and that it was not within tbe power of tbe President to annul tbe sentence or to mitigate it to suspension, and that, therefore, tbe money paid him while under suspension and while on waiting-orders was illegally paid, and should be set off against so much of any snm which may be found due tbe claimant, and judgment rendered against him for any balance due tbe defendants.
Tbe validity of the sentence of the court-martial to dismiss, or of tbe appointment by tbe President of W. S. Schley to remove, tbe claimant from tbe naval service becomes important here only in respect of the claimant’s right to retain tbe money thereafter paid to him j for, conceding that tbe claimant was legally out of tbe service, either by dismissal or by removal, as tbe Congress, by the special act authorizing bis reappointment manifestly assumed, still it was within tbe power of Congress to pass tbe act authorizing tbe President, with tbe advice and consent of tbe Senate, to reappoint tbe claimant commander as of any date subsequent to tbe date of dismissal under tbe sentence of tbe court-martial.
Tbe Congress by their act construe tbe sentence and tbe action of tbe Executive as having terminated tbe claimant’s service in tbe Navy by referring to him as “late commander in tbe United States Navy” and by providing for bis reappointment “to tbe same grade and rank” theretofore held by him, which appointment be accepted and still bolds.
That tbe Congress were of the opinion that some injustice *366 bad been, done tbe claimant is evident from the act, as otherwise his appointment would not have been authorized, and certainly not “ as of the date of August 1,1883.”
But whether the claimant was, by virtue of the sentence of the court-martial or of the appointment of W. S. Schley, legally out of the naval service at the time of the passage of the act authorizing his reappointment we deem it unnecessary to determine, as we are of the opinion that the rights of the parties must be measured by the act under which the claimant seeks to recover.
The act, as we have said, assumes that some injustice has been done the claimant, and if so it would not be consistent therewith to hold that the defendants were entitled to recover on their counterclaim.
On the other hand, while the act authorizes the President to appoint the claimant, “late a commander in the United States Navy, to the same grade and rank * * * as of the date of August 1,1883, and to place him on the retired list of the Navy as of the date of June 1,1895,” the proviso thereto is “ that he shall receive no pay or emoluments except from the date of such reappointment.”
The claimant’s appointment to the same grade and rank as of the date of August 1,1883, was manifestly intended only to fix the claimant’s status in respect of the grade and rank to which he claims he was entitled when his name was left off the register by direction of the Secretary of the Navy and Mullan was appointed in his stead, under the decision in the case of Blake v. The United States (103 U. S. R., 227), but not having rendered any service to the United States during that period and another having been paid the salary therefor, Congress added the proviso, thereby in effect saying that although you were out of the service by reason of the action of the appointing power, still, inasmuch as the Department recognized you as in the service until August 1,1883, we will sanction the action of the Department by giving you the same grade and rank as of that date, but, having rendered no service to the United States since that date, we will not pay you anything prior to the date of your reappointment, hence the proviso “ that he shall receive no pay or emoluments except from the date.of such reappointment.”
And herein lies the difference between this case and the Collins Case (15 C. Cls. R., 22), McAlpine Case (27 C. Cls. *367 R,.,.491), and other like cases cited and relied upon by the claimant.'
Tbe claimant, however, contends, and the able brief and argument of his counsel apparently justify the coutention, that the use of the word “reappointment” in the proviso refers back and relates to August 1,1883, as the date from which the claimant’s pay should begin; but if that be the correct construction, then the proviso is a nullity, as it is clear that without the proviso the claimant could not, under the authority of the adjudicated cases cited by the claimant, recover for salary prior to August 1,1883. So that the proviso must be given some effect different from that which would exist without it.
The office and purpose of the proviso evidently was to limit the claimant’s right in respect of pay, thereby excepting from the operation of the statute that which would otherwise have been included in it. This is familiar law.
Hence, adhering to the well-established rule of interpretation that statutes should be construed as a whole and effect given, if that can be done, to every word or part thereof, we must hold that the act under which the claimant seeks to recover limits him in respect of his right to pay to the date of his appointment, which was May .26, 1897, though for the purpose of fixing his status as to “ grade and rank as commander,” he was appointed “as of the date of August 1, 1883.”
The act recites that the claimant was “late a commander in the United States Navy,” and that the President was thereby authorized to appoint him “to the same grade and rank of commander in the United States Navy,” so that although the word appoint is used it was in fact a reappointment óf the claimant to his former grade and rank as commander; and if Congress had intended that the claimant should be paid as such from August 1,1883, they would have said so in more apt and definite language, and not having done so, we must give to the proviso, in its relation to the other parts of the act, the meaning which its office inrplies, i. e., a limitation upon the claimant’s right, under the act different from that which would exist without it.
What we have said in respect to the claimant’s right to pay applies, of course, to the period between the dates of his retirement and appointment, though it is clear that placing the claimant on the retired list was not an act of appointment or *368 of reappointment, but was consequent upon bis having reached the legal age for retirement.
For the reasons stated the petition and the counterclaim are both dismissed.
DAVIS, J., was not present when this case was tried and took no part in the decision.