Williams, Judge,
delivered the opinion of the court:
Plaintiff was retired as a Foreign Service officer, for disability, on August 31, 1932, on an annuity or retired pay of $1,623.12 per annum.
Subsequent to retirement plaintiff was employed, on May 9,1935, by the National Emergency Council, for a temporary period ending June 30, 1935, at a daily wage of $7, the total amount received for such services being $315; on February 1?, 1936, plaintiff was temporarily employed in the Resettlement Administration, at $1,620 per annum, and held that position until August 3, 1936, when he was appointed Assistant Fiscal Accounting Clerk for emergency work in the office of the Commissioner of Accounts and Audits, Treasury Department, with compensation of $1,620 per annum, which position he continues to hold; these temporary appointments held by plaintiff being in nowise connected with or under the rules of the United States Civil Service, and the compensation received by plaintiff for such services being at no time in excess of $1,620 per annum.
*288 The Comptroller General of the United States has caused to be withheld from and has refused to pay plaintiff his retirement pay from August 1, 1936, to the date of the filing of the petition herein and since that time. During the period in which plaintiff was receiving compensation for his services in the various employments stated, he was paid $1,582.55 from the retirement fund accumulated under the Act of 1924, as amended by the Act of 1931, for which sum the defendant has filed a counterclaim herein, claiming that that amount is due and owing by plaintiff to the defendant.
The question for decision is whether plaintiff is entitled to receive his retirement pay as a Foreign Service Officer during the period he was receiving compensation for services in the three temporary positions held by him in the executive branch of the Government.
The first Civil Service Retirement Act became a law May 22, 1920, 41 Stat. 614. Under this Act officers of the Foreign Service of the United States were placed in the classified civil service under section 2 of the Act and became eligible for retirement on an annuity as provided in sections 2 and 3. There is nowhere in the Act any provision prohibiting a retired Foreign Service Officer on an annuity from accepting compensation for services rendered in a temporary position in another division of the Government and drawing salary therefrom without being reduced in his annuity.
By the act of May 24, 1924, 43 Stat. 140, the President was authorized to prescribe rules and regulations for the establishment of a Foreign Service Retirement and Disability System to be administered under the direction of the Secretary of State. By this Act Foreign Service employees of the State Department who had theretofore been included under the Classified Civil Service Act of 1920 were removed therefrom and placed under a retirement system administered under the direction of the Secretary of State. Foreign Service employees of the State Department thus passed from classified civil service control and were enrolled under the new Foreign Service Act. This Act contained the following provision:
(m) Whenever any Foreign Service officer, after the date of his retirement, accepts a position of employment the emoluments of which are greater than the annuity *289 received by him from the United States Government by virtue of his retirement under this Act, the amount of the said annuity during the continuance of such employment shall be reduced by an equal amount:
It was intended by this provision to “discourage the practice of retired officers drawing Government annuities while earning large salaries in business.” (Report of the Committee on Foreign Affairs of the House of Representatives, No. 157, 68th Congress, 1st Session). The provision was omitted from the act of February 23, 1931, U. S. C. A. Title 22, Section 21 (j), amending the Foreign Service Act of May 24, 1924, for the reasons stated by the managers on the part of the House conferees in Conference Report No. 2702, House of Representatives, 7lst Congress, 3rd Session, accompanying the bill in its passage through the House and Senate:
And (e) elimination of the present provision of law (m) would prevent retired officers from obtaining employment with salaries in excess of their annuities which is a particular hardship upon retired officers with low annuities.
It appears therefore that this provision, the only limitation ever placed by Congress on an annuity, had ceased to be a part of the law before the plaintiff’s retirement on August 31,1932. In no event, however, would the limitation, even if in effect, be applicable to the plaintiff as the emoluments to him from the various positions held have never been more than $1,620, therefore less than his retirement allowance.
The defendant relies largely on section 58, Chapter 1, Title 5, U. S. C. A., which makes provision for double salaries :
Unless otherwise specifically authorized by law, no money appropriated by any act shall be available for payment to any person receiving more than one salary when the combined amount of said salaries exceeds the sum of $2,000 per annum
and contends that this statute is controlling in the case at bar, and that plaintiff is precluded thereby from receiving his retired pay in the amount of $1,623.12, and his salary for services contemporaneously rendered the defendant amounting to approximately $1,620 per annum.
*290 We do not agree with the defendant in this contention. We are not here dealing with “double salaries” but with one salary and one annuity, which the courts have held are entirely different things. In Calhoun v. United States, 66 Ct. Cls. 545, 549, the court was called upon to consider section 4 of the act of August 24, 1912, 37 Stat. 560, 561, establishing a permanent organization for the Panama Canal, which provides:
If any of the persons appointed or employed as aforesaid shall be persons in the military or naval service of the United States, the amount of the official salary paid to any such person shall be deducted from the amount of salary or compensation provided by or which shall be fixed under the terms of this Act.
The question for determination by the court was whether or not the provisions of this statute were meant to apply to a retired enlisted man. The court said:
We are of the opinion that the language used in the act of 1912 clearly indicates that the act was not intended to apply to retired enlisted men. It will be noted “that the amount of official salary paid to any such person shall be deducted * * “Salary,” as defined in the Standard Dictionary, is a “periodical allowance made as compensation to a person, for his official or professional service, or for his regular work.” Salary is current pay to a person for his regular work. Retired pay is not compensation for service performed. As used in the military and naval service, retired pay is a gratuity given in worthy cases in recognition of past services, for which no service whatever is rendered, and is usually in a sum less than the active-service pay. Essentially, it is a pension.
*****
We have reached the conclusion that the pay received by retired enlisted men in the military or naval service or the United States is not official salary as that term is used in the act of August 24, 1912.
In Geddes v. United States, 38 Ct. Cls. 428, the court construed the provision in the act of March 3, 1885, 23 Stat. 353, 356, which reads:
That no part of the money herein or hereafter appropriated for the Department of Agriculture shall be paid *291 to any person, as additional salary or compensation, receiving at tie same time other compensation as an officer or employee of the Government.
The claimant was chief clerk of the Department of Agriculture. While holding that position he was appointed and commissioned a captain of infantry in the United States Army from which position, under a special act of Congress, he was immediately retired. Subsequent to his retirement he had received his pay as chief clerk of the Department of Agriculture but had not received pay as a retired officer of the Army. The question submitted to the court was whether he was entitled under that Act in question to both the salary of the office of chief clerk and his pay as an officer on the retired list. The court in deciding that plaintiff was entitled to recover said:
To bring a retired officer of the Army within the inhibition of the statute it is plain that he must be an “officer or employee of the Government” within its intent; that his unofficial life after retirement must be regarded, within the intent of the statute, as service; that his three-fourths retired pay must be “salary or compensation” for such service. It is well settled that an officer on the retired list owes no service to the Government in time of peace; that if called into service in time of war he returns thereby to the active list and receives full pay; that there is but one military office which he can hold — that of Superintendent of the Soldiers’ Home; and that his reduced retired pay is but an honorary form of pension to be paid him when, having reached a certain age, it is presumed that he is no longer well fitted to render active service to the Government. (Hayden's case, ante, p. 39; Act 2d March, 1899, 30 Stat. L., p. 977, sec. 7). If this officer on the retired list had been rendering service to the Government, and if his retired pay was intended as “compensation” for that service, and if the Secretary of Agriculture had intended to give to this retired officer “additional compensation,” to be paid out of the funds of his Department, the case would come within the purview of the statute. But there must be “compensation” received before there can be “additional compensation” prohibited. As a matter of fact, the pay of a retired officer is not compensation; and it follows as a matter of law that the salary of the chief clerk of the Department of Agri *292 culture was not “additional compensation.” Tire act of 1885, therefore, does not control the case.
The Supreme Court has said that a statute prohibiting an officer from receiving more than one salary cannot “by fair interpretation be held to embrace an employment which has no affinity or connection, either in its character or by law of usage, with the line of his official duty, and where the service to be performed is of a different character and for a different place, and the amount of compensation regulated by law.” Converse v. United States (21 How., 463); United States v. Brindle (110 U. S., 688, 694); and this court has held ever since Collins's Case (15 C. Cls. R., 22, 40) that the pay of a retired officer “is not given as compensation for discharging the duties of any office during the period for which it is to be paid, but rather as a bounty and in the nature of a pension for services to his country previously performed.”
If the retired pay of an officer of the Army or Navy does not constitute salary, as these decisions hold, how much less can it be successfully contended that the retired pay of a Foreign Service officer, such as plaintiff in this case, constitutes salary ? Plaintiff before his retirement had contributed part of his earned salary to the Foreign Service Retirement Fund toward the payment of the annuity awarded to him upon retirement. In other words, part of his retired pay was taken from his earned salary in advance of his retirement, just as one pays in advance for a life insurance policy. The rest of his retired pay was a gratuity, or, as stated by the court in Geddes v. United States, supra, an “honorary form of pension.” The annuity granted plaintiff upon his retirement did not constitute salary within the meaning of the statute, hence the contention of the defendant that plaintiff is precluded from recovering by the provisions of paragraph 58, Chapter 1, Title 5, U. S. C. A., cannot be sustained.
The defendant concedes that there is no statutory prohibition against plaintiff receiving an annuity under the Foreign Service Act and being employed in a temporary position not under the Foreign Service, but maintains that without affirmative legislative action plaintiff cannot draw service compensation simultaneously with his annuity. The *293 Comptroller General, to whom tbe instant case was referred, 16 Comp. Gen. 121, said:
There is no prohibition of law against the reemployment in the executive civil service of a former Foreign Service officer — who has not attained the age for automatic retirement — retired for disability, but his retirement annuity may not be paid concurrently for the period of such employment.
The opinion of the Comptroller General was based on prior decisions rendered by him and by his predecessor, the Comptroller of the Treasury, in cases arising under acts of Congress other than the Foreign Service Act of May 24, 1924, as amended. We have examined these cases and are of the opinion that they have no application to either the facts or the law of the instant case. In the first place it is conceded that there is no statutory provision against plaintiff receiving an annuity under the Foreign Service Act and being employed at the same time in a temporary position not under that Act, and in the second place it is clear that Congress has placed no limitation on annuities granted under the Foreign Service Act. That Congress intended that annuitants under that Act should be paid their annuities in full is clearly indicated by the fact that Congress having originally placed a limitation on such annuities, and after T years of trial, realizing the burden it had put upon poor men in the Foreign Service with small annuities and no other means of livelihood, wiped out the limitation entirely in the amendatory act of February 23, 1931, because the limitation was a “particular hardship on retired officers with low annuities.”
Congress having refused to place a limitation on annuities granted under the Foreign Service Act of May 24, 1924, as amended, the court is without authority to do so. It is therefore held that plaintiff is entitled to recover the full amount of his claim. Judgment is awarded in the sum of 1^4,233.65, and the counterclaim is dismissed. It is so ordered.
LittuetoN, Judge; GeeeN, Judge; and Whaley, Chief Justice, concur.
Whitakee, Judge, took no part in the decision of this case.